Our next case is In-Depth Geophysical v. ConocoPhillips, 2021-10-13. Mr. Jensen, we're ready when you are. Thank you. May it please the Court. Although In-Depth's claim charts comply with the Board's guidelines, the Board declared the claim charts defective because it erroneously believed that the petition referred to an overview of the Zortes under Section 8A2 rather than the claim chart containing the Zortes disclosures. Can I clarify something up front? Yes, ma'am. The claim chart that you're referring to, that you thought the Board shouldn't have ignored, only relates to Claims 1 through 9, right? Correct. There's nothing in that chart about 10 through 17? Correct. Okay. Go ahead. Although I will clarify that the claim charts for Grounds 2 and 3 refer back to the claim chart for Claim 1 with respect to the limitations that are the same within the last step of each independent claim, 1, 10, and 14, that call for reconstructing the wayfield. So basically, Claim 1, the last step, refers to reconstructing the wayfield from the recovered seismic data. Independent Claims 10 and 14 refer back to the claim chart in Claim 1 that has the same last step limitations. So that's a double leap that you're asking the Board to take. In other words, even if we accept the proposition that the Board didn't properly consider the claim chart, you're then saying, and not only should they have considered the claim chart, but then they should have read whatever was said in the claim chart and figured out how it applies to claims that aren't even discussed. Well, Claim 1 is the same between the three grounds. Claims 10 and 14 both have identical last steps as Claim 1. And neither the Board nor Conoco had any difficulties in cross-referencing where these disclosures were found between the claim charts. There was never any difficulty as far as finding the limitations. The only difficulty expressed was the Board's finding the... But it's still not in the petition, right? Pardon me? It's still not in the petition, right? What's not? Anything discussing 10 through 17 in the claim chart. Well, the claims, in the claims 10 and 14 refer back to Claim 1 in the same claim chart. I get it. But we started out with you admitting that there's nothing in the claim chart that references 10 through 17. For Ground 1, correct. Okay. Based on this undisputed error, the Board concluded that the claim charts do not identify where any element of Claims 1, 10, or 14 are found in Zortes citing 37 CFR Section 42.104B4 at Appendix 32. It seemed to me that the Board considered not only the claim charts in your petition, but also your narrative section, which presented a motivation to combine theory. The rationale. The rationale. Yes, under the section. So it considered all of that and concluded that this was just too confusing to really provide adequate notice to the other side and really to the Board to understand exactly what is the roadmap of your proposed rejection of the claims. So I just want to underscore it's not just the claim chart. It's the claim chart combined with your rationale section. And I will address that, Your Honor. That's a good point because although this error is referred to in the Board's analysis for both Grounds 2 and 3, the most straightforward basis for reversing and remanding for further analysis is the Board's reliance solely on this error for Ground 3. The Board concluded at Appendix 33 through 34 that the rationale for Ground 3 fails to remedy the defects and ambiguities in the claim charts because the petition would still fail to identify where any element of the claim is found in Zortes. The Board thus concluded... Counsel, there's a very famous quote in opinion from the Seventh Circuit. It reads, Judges are not like pigs hunting for truffles buried in briefs. That applies to the PTAB judges too. And they have rules which require petitioners to lay out in detail where in a particular reference it applies to a particular part of the claim. And in-depth it did exactly that, but it didn't use the claim charts as far as identifying how it intended to rely on each reference. It used the rationale both for intending and identifying for the statute how it intended to rely on each reference and the reasons for combining references. Well, as you say, you don't have to have a claim chart if your discussion includes a description of how the claims would be found. So I can accept the proposition that in your discussion section there is a fair amount on the question of motivation to combine, but the Board still said, even with considering that, that you didn't do enough to really explain how you were going to read on all of those claims. Well, the Board essentially referred to two issues that it had with the rationale. First, it generally kind of referred to it had a lack of specificity. And then in the same sentence, same breath, it said, well, it also fails to remedy the defects and ambiguities in the claim charts. But it never explained why the rationale lacks specificity or fails to remedy this nonexistent defect in the claim chart other than the erroneous belief that the Zortes disclosures were missing. And it even went one step further and assumed that the rationale would provide notice of how in-depth intended to rely on each reference. And that's at Appendix 33-34. I guess for Ground 2, your petition was offering multiple rationales and combinations, right? And so the Board pointed that out and said it found that to be a little confusing as to deciphering what your intentions really were. The analysis there is a little less straightforward than Ground 3, Your Honor. The only explanation for Ground 2, though, is that the rationales contradict each other. It never explained why. And as we pointed out in our brief, the rationales are alternative rationales, but they don't contradict each other to the extent that they each require on the same elements in the same references. And it was very difficult to understand what the Board meant by contradictory, but as far as in-depth reliance on the particular elements from each reference, there's no contradiction there. But the Board's citation to the wrong section in the petition would be irrelevant if it had an alternative grounds as it relates to Ground 2. As far as Ground 2, that error would not be harmful error as it is in Ground 3 where it relies solely on this missing Zortes disclosures. But part of the problem here is that the Board's error stemmed from trying to fix your error, right? No, no. It completely confused a section of the petition. It had the right section number, 8A2, but it thought that that was the overview of Zortes, not the claim chart that it was directed to. Because if you go to 8A2, it's the claim chart. It kept referring to the overview, though, which would be understandable as to why it thought there was a lack of specificity and there were no Zortes disclosures because it was thinking the right section, but looking at the wrong section, which is the overview. So what do you want? You would say we should vacate and remand so the Board can look back at it? Based on that error alone, I think that Ground 3 should be reversed and remanded for the Board to consider the Zortes disclosures in the claim chart that it overlooked. But the Board's error doesn't stop there. Conoco dismisses this error as harmless and argues that for Ground 3, the rationale conflicts with the claim chart regarding Courtson's reconstruction disclosure and doesn't suggest Zortes was known as a superior method. But you still have district court proceedings in which you can attack these patents, correct? You can make these same arguments there, right? Not based on the estoppel, Your Honor. But with respect to the issues that the Board said were not raised? I don't believe that we could raise that based on the estoppel. Maybe because it could have been raised. Correct, correct. That's what we'd be facing, I'm sure. Conoco's arguments on both points are wrong and they were never adopted by the Board. The petition at Appendix 111 does in fact suggest that Zortes was known to be a superior reconstruction method because the reconstruction result improves with increasingly less uniform sampling. Courtson's disclosure in the claim chart at Appendix 117 for reconstructing the wave field refers to imaging the data, but does not disclose that it improves with less uniform sampling. The Board refers to the rationale at Appendix 33, but ignored the reason supporting the rationale as to why a skilled artisan would have applied Zortes' reconstruction techniques to Courtson, which is stated at Appendix 112 as for improving the reconstruction of the wave field in Courtson from the recovered seismic data. The Board didn't find any conflict because there is none. The Board did, however, abuse its discretion because it relied on erroneous facts. It ignored the reason supporting the rationale. I'm sorry before I lose you. You're at A112. You're discussing the motivation to combine section of your petition for Courtson and Zortes. Is that right? Correct. It's at Appendix 112. Yeah. And so your rationale to combine these two references comes from the first sentence of that paragraph. A posita would have been motivated by Courtson to consider known techniques for constructing the wave field in areas where seismic data is acquired using an irregular and non-uniform sampling pattern. Right? That's your motivation. That's part of the motivation. But what I'd like to direct you to is the appendix in connection with this, Appendix 33. The Board refers to this abridged reference of the same Appendix 112. And what's conspicuously missing is what's in the bracket portion at the end of the sentence, at the bottom of Appendix 33, which is the reason underlying the rationale for combining Zortes' reconstruction techniques with Courtson's non-uniform sampling. If that doesn't answer your question... Yeah, I'm trying to figure out whether your rationale for combining Courtson and Zortes was just too conclusory, that it failed to establish that these two references would have been combined by skill marks. Well, we believe it's fairly straightforward that Zortes provides an improved approach for reconstruction that would have improved the reconstruction in Courtson. But the Board never got there. It omitted the reason, the most significant aspect of the rationale. Well, what did it omit? On Appendix 112, the part that was omitted is successfully improving the reconstruction of the wave field from the recovered seismic data. Where's that in this... That's in Appendix 112. Yeah, where on... The very end of the middle paragraph. But that just seems to state the conclusion, not why. Well, the Board, in Appendix 33... The Board states correctly, you know, that a skilled artisan would have reason to apply. The reason, though, is what's missing. It's to improve the reconstruction in Courtson. Well, all the Board's doing there is citing your contention. It's not saying they agree with it. Pardon me? All the Board's doing at 833 is citing your contention. There's no statement afterwards like, we agree. No, there is not. Their only analysis, their only statement, was back to the error that they overlooked Zortes' disclosures. They never analyzed those disclosures that they overlooked in the claim chart. But in response to your question, the why is for improving the reconstruction in Courtson. So the Board here erred in three ways. Why would a reading of Courtson reveal a need to do any kind of improvement to a reconstruction of a way field? Well, the Courtson, it's not cited in the appendix, but our expert testified that it's inherent as far as the disclosure is concerned in the reconstruction technique that Courtson provides. However, there is no requirement that Courtson has to call out a deficiency or need, as stated in Jazz Pharmaceuticals versus Emile Pharmaceuticals at 895, at 1347, at 1336. The desire to improve what is known is an acceptable motivation. Counsel, as you may have noted, your red light is on. We will give you three minutes of rebuttal back. But let's hear from Mr. Peterson. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. It's a true privilege to be back here again in person. In the appeal, the Board did not abuse its discretion in concluding that grounds two and three were insufficiently stated. And let me start where my friend left off, discussing ground three in the petition. Because I'd like to call attention to two things. So first, my friend talks about the need to use the Duartez reference to improve the reconstruction techniques. But if you look at the claims, the claims don't require any particular type of reconstruction technique. The claims simply require reconstructing the wave field using any technique. And if you look at the claim chart on appendix page 117, my friend's claim chart says that Cordeson already discloses reconstructing the wave field. So with respect to obviousness. What about the argument that if the motivation is there to improve what it is that the prior art is doing or the alternative art is doing, why isn't that good enough? If they've got, they certainly at 872 and 873 have expert testimony or expert declarations saying it would improve that process. Well, Judge O'Malley, so first, whether it improves the process or uses an existing technique for reconstructing the waveform is simply irrelevant to the challenge to the claims. Any technique for reconstructing the waveforms is what the claims require. So that's one confusing point for us about this motivation to combine, is we seem to be talking about improving a piece of one prior art that, according to my friend, is already disclosed in the prior art in a way that renders the claim obvious. And second, I'll point out, as I think the court noted, what's missing here in that first full paragraph on appendix page 112 is the why. You have the statement that a person of ordinary skill in the art would have been motivated by Cordeson to consider known techniques for reconstructing the wave field. But what you don't see is any identification of the Cordeson reference that explains what would have created this motivation for one to do so. Maybe it is simply one of skill in the art would have read Cordeson and generally been interested in improving its reconstruction techniques. Maybe there's some express statement in the Cordeson reference. What we can't tell and what the board couldn't tell from this petition was what was being relied upon. I think it's also important to look at the carryover paragraph from appendix page 111 to 112. Now this is discussing the Zwartjes reference. And what I heard my friend tell you is the only thing that Zwartjes is being relied on is for improving the wave field reconstruction. But if you look at the top of appendix page 112, the petition is telling us about how the Zwartjes reference is disclosing that source points could be perturbed in the same manner with a reasonable expectation of successfully improving reconstruction of the wave field. So just again reading this, the board is looking at it trying to say, well hold on, are we relying on Zwartjes for perturbing the source points? Are we relying on Zwartjes for perturbing the receiver points? Or are we relying on Zwartjes for no particular reason for improving a piece of prior art, this reconstruction that Cordeson already, according to the petition, discloses in a way that would render the claims obvious. Judge Laurie, you talked about hunting for truffles. And I think that's an excellent analogy here. And that's why the review is of use of discretion because the board receives a lot of petitions. And I think the board is entrusted to exercise its discretion to decide exactly how much specificity it wants to require of a petitioner. It's up to the board to decide how much time it wants to spend trying to discern exactly what contribution is relied upon in the petition and how much clarity it's going to require from petitioners. Just two additional points before I turn to the cross-appeal, unless the court has questions, of course. Well, I guess my question is, do you think there is a rule or should be a rule that it is impermissible for a petitioner to cite to more than one reference in a claim chart for matching up with a particular claim limitation? The board here seemed to criticize this particular petition and the claim charts therein because the petitioner cited to more than one reference as matching up with a given claim limitation. And so that's making me wonder, should that really be a rule? Sometimes you will cite... I mean, I've seen plenty of petitions, claim charts, that do cite to more than one reference for matching up with a claim limitation. And to me, that simply illustrates how closely related the prior art references are and how much the cited prior art references overlap with the claim convention. So why would it be that there's some... Why would it be wrong to cite to more than one reference in a claim chart for a given limitation? Well, Judge Chen, so first let me say, I don't think the board applied that rule in this case to say that you may never cite to more than one reference for a particular limitation in a petition. I think what you see the board applying is what it stated on appendix page 27, which is that a petition has to provide notice of the specific ground of invalidity in the petition itself. Granted, the easiest way of doing that is going to be through a claim chart. But I don't think the board said uniformly you can never have more than one reference listed for a particular limitation, for a particular ground. I think what the board's saying is simply you need to provide notice in your petition of exactly what the grounds of invalidity... But why aren't those alternative grounds as opposed to contradictory grounds? That's what your friend's arguing. Well, Judge Amali, we think they were alternative grounds. The problem is we think there were so many different alternative grounds that neither Conoco nor the board knew which combination that in-depth was actually asserting. And in fact, if you look at their expert testimony, at his first deposition, you'll see this on appendix page 1878, we asked him, were you actually relying on all three of these references for this limitation? He said, yes, I am. And we went through each of the limitations in the claim chart, and every time he said, I'm relying on all three of these references. And then finally on appendix page 1892, he admitted, well, look, some of these are actually redundant. If you just do an objective reading of the petition itself, and then look at the motivation to combine rationale section, you can start piecing things together. Maybe there's an argument that ground two is still confusing, but ground three seems to be saying Cordson has everything, except the step of reconstructing the way field. That's his work. What's wrong with that for purposes of ground three? Would you agree at least that when a claim chart has multiple references citing as matching up with various claim limitations, the motivation to combine rationale section of a petition can provide you adequate notice as to what the real proposed combination is? Yes, Your Honor, I certainly do. I acknowledge that in the abstract. I disagree, of course, that that was done here. And in fact, again, I think this is where their expert's testimony and their arguments to the board are helpful. Because when we asked their expert, and he told us, yes, I actually relied on all of these. That's at the deposition. That's at the deposition. That's after the petition has been filed and the institution has been ordered. I'm just talking about an objective read of the petition itself for ground three, Cordson plus Zorkas. What's confusing there in the motivation to combine rationale paragraph and the proposed combination that I think I can discern pretty reasonably? Your Honor, I think I explained what confuses me about it. First, we're reciting aspects of Zorkas in the motivation to combine section about perturbing source points, about potentially perturbing receiver points that my friend now says are just completely irrelevant and not relied upon. If that's the case, those shouldn't be in the motivation to combine section. And second, with appendix page 112, you don't need to rely on a particular technique for reconstructing the waveform to show that these claims are obvious or anticipated. The technique used to reconstruct the waveform is irrelevant. Claim one, if you look at E, simply requires reconstructing the wave field from the recovered data. There's been- That answer doesn't help me though because we're not trying to shoot for the claimed invention. We're just trying to ask ourselves, what would a skilled artisan do back in the day at the time of this invention? And the skilled artisan was aware of both Kortzin and Zorkas. And the petition is asserting that a skilled artisan would borrow the algorithm from Zorkas to do the wave field reconstruction of the collected data that you get from Kortzin and voila, that would be the obvious combination to do. It just so happens to line up with your claimed limitation elements. So pointing to the claim here doesn't really answer the question of what's wrong with the clarity of the proposed combination of references here from ground three. Respectfully, Your Honor, I think the claim helps us understand the grounds. Because if Kortzin already teaches reconstructing the waveform, there's no need to bring in the Zorkas reference at all. Now maybe, I'm not suggesting the petitioner can't do that. It's entirely possible that Kortzin anticipated these grounds and that just, or rendered them obvious as a single reference obviousness challenge. But it's at the very least unusual when you say one piece of prior art discloses everything by itself. Nonetheless, my ground is- Counselor, I'd like to hear you address the cross appeal. Thank you, Your Honor. I appreciate that. With respect to the cross appeal, there are two separate grounds, two independent errors that we think the board made with respect to ground one. The first, and we think the most straightforward, is crediting the testimony of Dr. Yilmaz that the Zorkas reference discloses that the source points must be located within the survey area. There's only one piece of evidence on this. That's the declaration of Dr. Yilmaz. Let's assume for the moment that there's substantial evidence to support that finding, or alternatively it was you raised that particular issue too late in time, that the multiple source points have to be in the survey area. What about the other argument, which is this more performance of real world steps,  into the ground? Can you focus on that for me? Absolutely, Your Honor. If you look at the Zorkas reference, Zorkas is teaching a mathematical reconstruction technique. In the reference, it illustrates how that reconstruction technique could be applied to synthetic sample computer generated data. It's undisputed that in generating this sample survey in Figure 9C, Zorkas did not actually direct seismic energy into physical ground, didn't actually place receivers. Let's assume that we read the reference as even though it provides an example using simulated data, the reference is really devoted to real world applications, i.e. real world seismic surveys. Then why isn't it true that for Zorkas to have any meaning or value in that context, you actually have to perform a seismic survey to generate the data that you need to apply Zorkas' invented algorithm for reconstructing a wave field? Your Honor, we don't dispute that. If the claims simply require, say, using Zorkas' reconstruction technique and performing a real world seismic survey of any type, I think there would be very strong arguments that Zorkas anticipates the claims. The problem here is that the claims don't simply require performing any real world seismic survey. The whole point of the claim... But doesn't the board say, but what's the point of all of this if that's not what you're going to ultimately do at the end of the day? Your Honor, I'm not talking about performing seismic surveys in the abstract. What the claims require is a very particular seismic survey with very particular receiver placement, very particular location of the source points. So the question is not, does Zorkas disclose that someone might want to go forth and perform a real world seismic survey? There's no question. The question is, does Zorkas disclose performing specific limitations of the 248 patent involving going out into the real world, lining up receivers in a specific pattern, putting source points into a specific pattern? And Zorkas never says, you won't find an express disclosure that says you want to fill in the arc, should go forth, look at this sample data that we have, zoom in on it, measure it, and conduct a real world seismic survey in accordance with this pattern. My understanding of Zorkas is that it does disclose figures showing you a pattern of receivers that are both non-aligned and non-uniform. I mean, I suppose we can debate that, but let's assume that it does. And let's also assume there's substantial evidence for the board's finding that to generate the data that Zorkas was disclosed as using, it would necessarily have to have multiple source points, not a single source point. So therefore, all of those limitations that are recited in the claim are actually captured in the Zorkas document. And so if you've already agreed that Zorkas is absolutely for real world seismic surveys, then why doesn't that end the question? Given that I might conclude that it does teach the arrangement of the receivers and it does teach the use of multiple source points. Well, I think the source points might actually be the greatest vulnerability with this because, to be clear, you don't see an express teaching on the source points. The only way they make the argument about the multiple source points and their location is by performing some calculations and essentially relying on inherent disclosure that the source Zorkas necessarily simulated multiple source points. And, Your Honor, the point with anticipation, of course, is that it's not enough to say you could go forth and use Zorkas in the real world. Anticipation requires identity. It requires... So is it your concern that Zorkas doesn't actually say direct an energy into the ground or is your concern that it doesn't say exactly where to direct it into the ground? Much more where, Your Honor. This is really about the figure 9C arrangement of receivers and then these arrangement of source points that were inherently used in figure 9C. That's one of what we think of as the flaws in the board's anticipation analysis is you don't actually see the board going limitation by limitation with these real world limitations and saying we think Zorkas expressly or inherently discloses deploying physical receivers in a physical survey area where the receivers have this particular lateral spacing, we claim. Okay, so let me make sure I have in my head what your position is. You don't take issue with the fact that Zorkas, it can reasonably be read as doing mathematical calculations on data collected from a real world survey and that real... does it disclose the very real world survey recited in these claims but at the same time, any real world seismic survey would necessarily require you to direct energy into the ground. That's right, Your Honor. This isn't about generally at a high level directing energy into the ground. This is about actually performing a survey modeled on the figure 9C. So you're saying it's not good enough to disclose non-alignment for instance but you have to disclose the precise non-alignment. Well, that's right. That's what the claims cover is precise non-alignment particularly the dependent claims which go into more detail. So are you walking away from issue 1 in your cross-appeal? No, Your Honor, I'm not because the board looked at this at a high level with generally with respect to disclosing and so our argument really is with anticipation, you needed to look closely at is the board teaching directing energy into the ground when you conduct these other when you conduct this figure 9C survey. And again, this is sample data used to illustrate a mathematical algorithm and the suggestion is that one of skill in the art is going to pour through that sample data blow it up and without any suggestion in the art say, I think I will just go forth into the real world and conduct a survey that matches this sample data. There was no ground that relied on Suarte's alone for obviousness, right? No, there's not. And I think, look, if this were a single reference obviousness argument, this would be very different. If the board had found one of skill in the art would have in light of figure 9C found it obvious to arrange in the real world receivers in that pattern we'd be making a very different argument here. This is anticipation. Anticipation is a high bar. And I think if you look at the test for anticipation with each of these limitations you will not find Suarte as either expressly or inherently disclosing performing this 9C survey. Thank you, counsel. You have well exceeded your allotted time and even though you have a cross appeal I have no indication here that you wish to save time to rebut on the cross appeal. But we'll give Mr. Jensen three minutes and if he addresses the cross appeal then we'll give you two minutes of rebuttal time on the cross appeal. Thank you, your honor. Thank you, your honor. I just have a couple of points to bring up in regards to the cross appeal. I think that my friend's argument can be condensed into one specific issue and that's the removal of the perception of the person of ordinary skill in the art from the anticipation test. What he's asking is a broad ruling that computer simulations cannot anticipate a real world claim regardless of what one of ordinary skill in the art would understand from a simulation. Didn't he just say that's not what he's arguing? But if you look at the briefing in this context in his great brief 10 this is what they're arguing for is a disassociation of what one of ordinary skill in the art would perceive from the simulation to say that all simulations they can't anticipate a real world claim. But they're not all alike as demonstrated here. If you took a flight simulator for example and a pilot in training is a person of ordinary skill in the art if the claim required the steps for landing a real plane and the simulation required the same steps wouldn't the pilot understand from the simulation as disclosing how to land a real plane according to the claimed steps? The fact that a simulation may not have been performed in the real world doesn't detract from what the simulation teaches a person of ordinary skill in the art as suggested by the board in appendix 19 through 20. And I also reiterate that Duartes does contemplate actually tested its reconstruction techniques on field data meaning that a real survey had to take place to obtain the field data. That's in appendix 175 and 184. So even without the evidence of the field data used to test these reconstruction techniques substantial evidence supports the board's conclusion that one of ordinary skill in the art would have understood Duartes to disclose the survey parameters and reconstruction techniques for an actual survey. Thank you. Thank you Mr. Jensen. Mr. Peterson two minutes on your cross appeal. Thank you your honor. I think the difference with my friend's hypothetical is that a pilot landing a plane is actually performing steps albeit on a computer simulation that one of skill in the art may recognize would be performed in the real world. Duartes is not listing out here's how you perform steps for a survey either on a simulation or on a computer it's just providing sample data used to illustrate a mathematical algorithm. And on this point particularly with the source placement I point you to appendix page 2588 that is the deposition of in-depth expert. We asked him about source placement for Duartes. He said well you would need to use the same sources as Duartes but only if you were trying to recreate the same data as Duartes. And why on earth would I ever want to recreate the same data as Duartes. I'm not actually going to get the same response as Duartes. So I wouldn't have any incentive to use the same source placement that Duartes does. You see this again appendix page 2588 that's their expert's testimony. Duartes simply doesn't say to one of skill in the art it may suggest generally you should conduct some type of real world survey but what it doesn't say is one of skill in the art you should take our sample data at figure 9C and that's the gold standard model for conducting surveys in the real world. Duartes just says here's some data that we use to apply our algorithm to. Maybe that data renders it obvious to conduct these method steps in the real world but Duartes doesn't expressly disclose follow these method steps in the real world nor does it inherently require doing so. And also not does it inherently require doing so Duartes reference itself didn't perform these method steps in the real world. Unless the panel has further questions. Thank you. Council will drill down into this case and take it under submission.